UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------X
HOMESTEAD VILLAGE ASSOC., L.P.,

                  Plaintiff,             MEMORANDUM & ORDER
                                        09-CV-3951(JS)(ARL)

    - against -

DIAMOND STATE INS. CO., THE CHUBB
INS. CO. OF NEW JERSEY, and CAPACITY
COVERAGE CO. OF NEW JERSEY,

                  Defendants.

------------------------------------X
APPEARANCES:
For Plaintiff:       Scott Justin Kantor, Esq.
                  William H. Parash, Esq.
                  Joshua L. Mallin, Esq.
                  Weg & Myers P.C.
                  52 Duane Street, 2nd Floor
                  New York, NY 10007

For Defendants
Capacity:           James Michael Skelly, Esq.
                  Karen M. Lager, Esq.
                  Marks, ONeill, Obrien & Courtney
                  530 Saw Mill River Road
                  Elmsford, NY 10523

Diamond State:      Michael Anthony Miranda, Esq.
                  Anne K. Zangos, Esq.
                  Ron Ben-Bassat, Esq.
                  Miranda Sokoloff Sambursky
                  Slone Verveniotis LLP
                  240 Mineola Blvd.
                  Mineola, NY 11501

Chubb Insurance:    Judith Feinberg Goodman, Esq.
                  Howard M. Wagner, Esq.
                  Goodman & Jacobs LLP
                  75 Broad Street, 30th Floor
                  New York, NY 10004

SEYBERT, District Judge:

Plaintiff Homestead Village Associates, LP ("Homestead") sued Defendants Diamond State Insurance Company ("Diamond"), and the Chubb Insurance Company of New Jersey ("Chubb") seeking a declaratory judgment that Diamond and Chubb must defend and indemnify Homestead in connection with a personal injury action pending in Suffolk County. Homestead also sued its insurance broker, Defendant Capacity Coverage Company of New Jersey ("Capacity") for breach of contract and negligence. Diamond filed a counter-claim seeking a declaration that its policy provides no coverage in connection with the underlying action. See Docket Entry 15.

All parties cross-moved for summary judgment. For the following reasons, Homestead's and Capacity's motions are DENIED. Diamond's motion is GRANTED. Chubb's motion is GRANTED IN PART AND DENIED IN PART.

BACKGROUND

Plaintiff Homestead owns an apartment complex in Coram, New York (the "Apartments"). Homestead has no employees, and it relies on Sterling Management Corporation ("Sterling") to act as its property manager. (Diamond 56.1 Cntr-Stmt. ¶¶ 2-3.) Capacity, an insurance broker licensed in New Jersey, has been Sterling's insurance broker for approximately twenty years. (Id.

2

at ¶ 7.)  On Homestead and Sterling's behalf, Capacity procured the two insurance policies in this case: a general liability policy from Diamond (the "Diamond Policy") and an excess insurance policy from Chubb (the "Chubb Policy").

On October 22, 2007, Frank Olmeda, a Sterling employee, was injured while performing maintenance work at the Apartments (the "Accident").  Another Sterling employee prepared an incident report stating that a piece of wood fell across Olmeda's shoulders and that Olmeda complained of pain to his neck, back and jaw.  (Miranda Decl., Ex. I.)  Co-workers called 911, and an ambulance brought Olmeda to the hospital.[1]  (Id.)

The same day, Sterling notified Capacity of the Accident via fax.  (Homestead 56.1 Stmt. ¶ 31.)  As will be discussed later, the content of that notice is disputed, but Capacity admits receiving at least a "C-2" workers' compensation claim form that described the Accident but did not mention an ambulance.  (See Capacity 56.1 Cntr-Stmt. ¶ 31.)  On the day after the Accident, Barbara Weronko, the Capacity claims manager who handled the Olmeda paperwork, forwarded a notice of claim to

---

[1] Plaintiff maintains that Olmeda had a history of job-site accidents, including one in which he injured his foot by stepping on a nail.  (Homestead Br. 2.)  As will be seen, even if credited, this has no bearing on the outcome of the pending motions.

Homestead's workers' compensation insurer, AIG. (Homestead 56.1 Stmt. ¶ 45.) Neither Weronko nor anyone else at Capacity notified Diamond or Chubb of the Accident at the time. (Capacity 56.1 Cntr-Stmt. ¶ 47.)

Neither Homestead nor Sterling nor Capacity believed the Accident would result in anything more than a workers' compensation claim, but Olmeda's injuries were allegedly more serious than Homestead, Sterling or Capacity realized at the time. The Workers' Compensation Board declared Olmeda temporarily partially disabled (see Homestead Br. 7), and Olmeda eventually sued Homestead in state court. (Id.) The underlying suit, Olmeda v. Homestead Village, Index No. 03194/09 (the "Olmeda Action"), alleges that Olmeda suffered permanent personal injuries and great pain and anguish. (See Homestead Br. 7.)

Homestead was served with the Olmeda Action on March 12, 2009. That day, Homestead forwarded the summons and complaint to Capacity, (Homestead 56.1 Stmt. ¶¶ 59-59) and Capacity in turn forwarded them to Diamond's claims administrator and to Chubb (id. ¶¶ 61-62). Diamond disclaimed coverage on late notice grounds on April 22, 2009 (Id. ¶ 72), and Chubb disclaimed coverage for the same reasons on May 26,

2009 (<u>id.</u> ¶ 80).

DISCUSSION

Homestead seeks a declaratory judgment that Diamond and Chubb have a duty to defend and indemnify it in connection with the Olmeda Action. In the alternative, it argues that Capacity, by virtue of its failure to notify the appropriate insurers, must reimburse Homestead its legal costs and any damages it has to pay Olmeda as a result of his personal injury suit. All parties moved for summary judgment. After discussing the legal standard and a choice of law issue, the Court addresses the pending motions in the following order: as between Homestead and Diamond, as between Homestead and Chubb, and as between Homestead and Capacity.

## I. <u>Legal Standard on a Summary Judgment Motion</u>

Summary judgment is only appropriate where the moving party can demonstrate that there is "no genuine dispute as to any material fact" and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). In considering this question, the Court considers "the pleadings, depositions, answers to interrogatories and admissions on file, together any other firsthand information including but not limited to affidavits." <u>Nnebe v. Daus</u>, __ F.3d __, 2011 WL

5

2149924, at *6 (2d Cir. May 31, 2011); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265, 273 (1986); McLee v. Chrysler Corp., 109 F.3d 130, 134 (2d Cir. 1997); see also FED. R. CIV. P. 56(c). "In assessing the record to determine whether there is a genuine issue to be tried . . . the court is required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." McLee, 109 F.3d at 134. The burden of proving that there is no genuine issue of material fact rests with the moving party. Gallo v. Prudential Residential Servs., L.P., 22 F.3d 1219, 1223 (2d Cir. 1994) (citing Heyman v. Com. & Indus. Ins. Co., 524 F.2d 1317, 1320 (2d Cir. 1975)). Once that burden is met, the non-moving party must "come forward with specific facts," LaBounty v. Coughlin, 137 F.3d 68, 73 (2d Cir. 1998), to demonstrate that "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). "Mere conclusory allegations or denials will not suffice." Williams v. Smith, 781 F.2d 319, 323 (2d Cir. 1986). And "unsupported allegations do not create a material issue of fact." Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir.

2000).

II. <u>New York Law Governs This Action</u>

For apparently the first time in this litigation, Homestead and Capacity argue that New Jersey law, not New York law, applies to the contract claims in this case. (<u>See</u> Diamond Reply 12) (complaining that the choice-of-law issue was not raised at an earlier stage.) Based on the discussion that follows, the Court concludes that New York law applies to Homestead's contract-based claims against Diamond and Chubb.

Federal Courts sitting in diversity apply the choice-of-law analysis of the forum state. <u>See, e.g.</u>, <u>GlobalNet Financial.Com, Inc. v. Frank Crystal & Co., Inc.</u>, 449 F.3d 377, 382 (2d Cir. 2006); <u>Maryland Cas. Co. v. Continental Cas. Co.</u>, 332 F.3d 145, 151 (2d Cir. 2003). Under New York's two-step choice of law framework, the first issue is whether an actual conflict exists between the laws of the competing jurisdictions. <u>See</u> <u>GlobalNet</u>, 449 F.3d at 382. New Jersey law requires insurers asserting a late notice defense to show that they were prejudiced by the untimely notice. <u>See, e.g.</u>, <u>Travelers Cas. and Sur. Co. v. Dormitory Auth.</u>, No. 07-CV-6915, 2008 WL 4861910, at *2 (S.D.N.Y. Nov. 5, 2008). New York law does not, <u>id.</u> at *2, at least for insurers seeking to disclaim coverage

under policies enacted prior to January 17, 2009.[2]   This

difference will affect the outcome of this case and is thus an

actual conflict for the purposes of a choice-of-law analysis.

See Dormitory Auth., 2008 WL 4861910, at *2.

        For contract claims, the second step is to determine

"which State has the most significant relationship to the

transaction and the parties."   Schwartz v. Liberty Mut. Ins.

Co., 539 F.3d 135, 151 (2d Cir. 2008) (quoting Zurich Ins. Co.

v. Shearson Lehman Hutton, Inc., 84 N.Y.2d 309, 317, 618

N.Y.S.2d 609, 642 N.E.2d 1065 (1994)).   In this analysis,

commonly known as the "center of gravity" or "grouping of

contacts" test, New York courts look to "the location of the

insured risk; the insured's principal place of business; where

the policy was issued and delivered; the location of the broker

or agent placing the policy; where the premiums were paid; and

the insurer's place of business."   Olin Corp. v. Ins. Co. of N.

Am., 743 F. Supp. 1044, 1049 (S.D.N.Y. 1990).   Of these factors,

the location of the insured risk is given the greatest weight.

Schwartz, 539 F.3d at 152 ("New York recognizes the precept that

---

[2] New York Insurance Law Section 3420 was recently amended to
require an insurer disclaiming coverage on late notice grounds
to establish prejudice.   N.Y. INS. L. 3420(a)(5).   This rule,
however, only applies to insurance policies enacted after
January 17, 2009.

a court should apply 'the local law of the state which the parties understood was to be the principal location of the insured risk . . . unless with respect to the particular issue, some other state has a more significant relationship . . . to the transaction and the parties.'") (quoting Restatement (Second) of Conflict of Laws § 193 (1971)); Md. Cas. Co. v. Cont'l Cas. Co., 332 F.3d 145, 152-53 (2d Cir. 2003); Zurich Ins. Co. v. Shearson Lehman Hutton, Inc., 84 N.Y.2d 309, 642 N.E.2d 1065, 1069 (1994). Additionally, courts have held that actions to determine an insurer's duties vis-à-vis events that occurred in New York are governed by New York law. Ill. Nat. Ins. Co. v. Banc One Acceptance Corp., No. 05-CV-1260, 2008 WL 5423262, at *10 (N.D.N.Y. Dec. 29, 2008); N.Y. State Ins. Fund v. Mount Vernon Fire Ins. Co., No. 03-CV-6652, 2005 WL 82036, at *3 n.1 (S.D.N.Y. Jan. 13, 2005) (quoting U.S. Underwriters Ins. Co. v. Congregation Kollel Tisereth, Tsvi, No. 99-CV-7398, 2004 WL 2191051, at *4 (S.D.N.Y. Sept. 30, 2004)).

Applying this analysis, the Court concludes that New York law governs the contract claims in this case. Although some factors favor New Jersey, including that the policies were negotiated and delivered there (see Capacity Br. at 6), the insured risks were in New York. All ten of the premises listed

on the Diamond Policy's "Declarations of the Policy" are in New York.  See Dormitory Auth., 2008 WL 4861910, at *3-4.  Further, the thrust of this case is to determine Diamond's and Chubb's duties to Homestead, if any, relating to an accident that occurred in New York and to a personal injury lawsuit being litigated in New York.  Congregation Kollel Tisereth, Tsvi, 2004 WL 2191051, at *4 (explaining that if "the underlying incident took place in New York, New York law applies to [that] action").  Also, as Diamond points out, the Diamond Policy's endorsement titled "New York Changes--Legal Actions Against Us" evidences the parties' understanding that New York law would govern the contract.  See Dormitory Auth., 2008 WL 4861910, at *4 ("[T]he many New Jersey-specific endorsements contained in the policy indicate that Harleysville expected New Jersey law to supply the rules of decision for disputes over the policy.")

III. Diamond's Liability

Diamond, Homestead's primary liability insurer, disclaimed coverage because it did not receive prompt notice of the Accident.  Homestead responds that the delay was excusable under the circumstances, which included an accident-prone victim who had never before filed a lawsuit despite numerous job-site accidents.  The undisputed evidence establishes that the delay

in notifying Diamond was unreasonable and inexcusable.

A. Prompt Notice Required

The Diamond Policy required Homestead to notify Diamond "of an 'occurrence' or an offense which may result in a claim" "as soon as practicable." (Diamond Policy, Kantor Decl. Ex. F., § IV(2)(a).)  In New York, "[w]here a policy of liability insurance requires that notice of an occurrence be given 'as soon as practicable,' such notice must be accorded the carrier within a reasonable period of time." Great Canal Realty Corp. v. Seneca Ins. Co., Inc., 5 N.Y.3d 742, 743, 833 N.E.2d 1196, 1197 (2005) (citations omitted).  "The insured's failure to satisfy the notice requirement constitutes 'a failure to comply with a condition precedent which, as a matter of law, vitiates the contract.'" Id. (citations omitted).  As mentioned already, New York, unlike many states, does not require that an insurer asserting a lack of notice defense show that it has been prejudiced by the untimely notification.  See id.

An insured's delay in notifying its carrier may be excused if it reasonably believed that there was no potential for liability in light of a prompt investigation.  The delay must be based on "a good faith belief of nonliability, provided that belief is reasonable." Great Canal, 833 N.E. 2d at 1197

(quoting Sec. Mut. Ins. Co. v. Acker-Fitzsimons Corp., 31 N.Y.2d 436, 441, 340 N.Y.S.2d 902, 293 N.E.2d 76 (1972)).  Courts resolve this issue by asking whether "a reasonably prudent person should have believed that the potential for liability has arisen."  Winstead v. Uniondale Union Free Sch. Dist., 170 A.D.2d 500, 503, 565 N.Y.S.2d 845 (2d Dep't 1991).  Any insured asserting its belief in non-liability as a defense, however, has a duty to inquire whether the circumstances surrounding the incident raise the reasonable probability of a claim.  See Safeguard Ins. Co. v. Angel Guardian Home, 946 F. Supp. 221, 227 (E.D.N.Y. 1996); Great Canal, 833 N.E. 2d at 1197 (quoting Acker-Fitzsimons, 31 N.Y.2d at 441).

   B. Notice to Diamond was Inexcusably Late

      Here, the undisputed facts establish that a more-than-16-month delay in notifying Diamond about the Accident was not reasonable, and summary judgment in Diamond's favor is therefore appropriate.  See St. James Mech., Inc. v. Royal & Sunalliance, 44 A.D.3d 1030, 1031, 845 N.Y.S.2d 83 (2d Dep't 2007). Homestead knew that Olmeda suffered a workplace injury serious enough to warrant ambulance transport to the hospital.  See supra at 3.  When he was injured, Olmeda complained of neck, back and jaw pain.  Id.  These facts would have alerted a

reasonably prudent person to the potential for liability. <u>See</u> <u>U.S. Underwriters Ins. Co. v. Calandra</u>, No. 07-CV-4933, 2010 WL 1049295, at *4 (E.D.N.Y. Mar. 19, 2010) (6-month delay was not reasonable where accident victim was taken to hospital in an ambulance); <u>Kaesong Corp. v. United Nat. Specialty Ins. Co.</u>, No. 07-CV-2897, 2008 WL 1902684, at *3 (E.D.N.Y. 2008) (five-month delay was unreasonable, where store employees helped victim and prepared a report indicating that she had been taken to the hospital in an ambulance); <u>Paramount Ins. Co. v. Rosedale Gardens, Inc.</u>, 293 A.D.2d 235, 241-42, 743 N.Y.S.2d 59, 64 (1st Dep't 2002).

Homestead argues that Olmeda's track record of relatively minor job-site injuries reasonably led Homestead to believe that the Accident was minor. (<u>See</u> Homestead Br. 5.) While "not every trivial mishap or occurrence" triggers an insured's duty to notify its carrier "even though [the incident] may prove afterwards to result in serious injury," <u>Kelly v. Nationwide Mut. Ins. Co.</u>, 174 A.D.2d 481, 571 N.Y.S.2d 258, 259 (1st Dep't 1991), it does not follow that because Olmeda once stepped on a nail at work that this Accident was necessarily minor (<u>see</u> Homestead Br. 5). In <u>Kelly</u>, the underlying car accident was so minor it caused only five dollars' worth of

vehicle damage and no one requested medical attention at the scene. See Kelly, 571 N.Y.S.2d at 259. In Melcher v. Ocean Accident & Guarantee Corp., on which Kelly relies, the injured victim told co-workers that he was frightened but not hurt after an elevator mishap. 226 N.Y. 51, 123 N.E. 81 (1919). By contrast, Olmeda complained of neck and back injuries and was taken to the hospital in an ambulance.

Homestead also suggests that Olmeda's failure to sue Homestead after previous injuries was another reason it thought the Accident did not warrant notifying its liability insurers. (See Homestead Br. 12.) Apart from the possibility that Homestead inferred that Olmeda is an inherently non-litigious man, the Court does not understand how Olmeda's decision not to sue after past incidents would make him less likely to sue after this Accident (which was appreciably more serious than stepping on a nail). Further, it seems to the Court that a man who, as Homestead puts it, "habitually" filed workers' compensation claims would be more, not less, likely to file suit. See Paramount, 743 N.Y.S.2d at 63 (earlier, unsubstantiated claim, to which insured pointed to justify its failure to notify carrier, "does not even logically support the decision" not to notify the insurer; "it would seem that this circumstance should

have the opposite effect").

Homestead also cannot excuse the delayed notification by its assuming that workers' compensation insurance would cover Olmeda's needs. See Lobosco v. Best Buy, Inc., 80 A.D.3d 728, 732, 915 N.Y.S.2d 305 (2d Dep't 2011) ("Their proffered excuses that they believed the accident would not result in a claim because the plaintiff's injuries appeared to be minor, and because he had filed a workers' compensation claim, were not reasonable in view of both the fact that they were aware that the plaintiff had sought medical treatment for his injuries, and Dame's failure to inquire further as to his condition.").

Accordingly, based on Homestead's unreasonable and inexcusable delay in notifying Diamond of the Accident, Diamond is entitled to summary judgment on its declaratory judgment claim. Diamond has no duty to indemnify or defend Homestead in connection with the Accident.

IV. Chubb's Liability

The question of Chubb's liability presents slightly different issues. Chubb argues that (1) it has no duty to indemnify Homestead because Homestead provided late notice of the Accident; (2) it timely disclaimed coverage; and (3) even if Homestead provided timely notice or Chubb failed to timely

disclaim, Chubb has no duty to "drop down" to indemnify Homestead below the Diamond Policy's $1,000,000 primary layer. Relatedly, Chubb also argues that it has no duty to defend Homestead. For the reasons that follow, Chubb's motion is GRANTED IN PART AND DENIED IN PART.

A. <u>Late Notice to Chubb</u>

The Chubb Policy's notice provision required Homestead to notify both Chubb "and any insurers of underling insurance . . . as soon as practicable of any occurrence or offense that may result in a claim, if the claim may involve us or other insurers . . . ." (<u>See</u> Chubb 56.1 Stmt. ¶ 16 (emphasis added).) Chubb argues that, notwithstanding precedent interpreting language in different excess insurance policies as requiring notice as soon as practicable after the insured learns facts suggesting that the excess (as opposed to primary) insurance may be implicated, the Chubb Policy required Homestead to notify both Chubb and Diamond as soon as practicable after any incident that may result in a claim involving <u>any</u> insurance. (<u>See</u> Chubb Reply 7.)

The Court agrees that the unambiguous language of the Chubb policy required Homestead to notify Chubb of a potential claim even if the claim initially only involved "other insurers." As discussed already, Homestead reasonably should

have thought that the Accident would trigger its primary insurance, and its delay in notifying Diamond caused it to breach its contract with Chubb. See Ambra v. Awad, 62 A.D.3d 732, 734, 879 N.Y.S.2d 160, 163 (2d Dep't 2009) ("Pursuant to the terms of Makko's excess insurance policy, however, Makko was obligated to notify the insurer of any claim involving a scheduled underlying policy as soon as possible." (citations omitted) (emphasis in original)).

The Court rejects Homestead's agency and savings clause arguments. As to its agency argument, Homestead asserts that it timely notified Chubb of the Accident by immediately notifying Capacity, which is a Chubb agent. According to Homestead, Capacity's knowledge of the Accident is imputed to Chubb regardless of whether Chubb had actual knowledge of it. Assuming that Capacity's knowledge can be imputed to Chubb on an agency theory, Homestead's argument fails anyway because Homestead did not notify both Chubb and any insurers of underlying insurance (i.e., Diamond) of the Accident in a timely fashion.

As to its savings clause argument, Homestead maintains that the Chubb policy, as excess coverage, provides for a more relaxed notice requirement than is typical of primary coverage.

Specifically, Homestead argues that the following language excuses the late notice:

> If a claim or loss does not reasonably appear to involve either this insurance <u>or any underlying insurance</u>, but it later develops into a claim or loss to which this insurance applies, the failure to report it to us will not violate this condition, provided the insured gives us immediate notice as soon as the insured is aware that this insurance may apply to such claim or loss.

(Chubb Policy, Kantor Decl. Ex. G, at p. 21 (emphasis added).) This provision is inapplicable here because, as discussed already, the Accident did reasonably appear to involve "any underlying insurance"--Diamond's primary liability coverage.

   B. <u>Whether Chubb Timely Disclaimed</u>

   Having determined that Homestead's notice to Chubb was untimely, the question then becomes whether Chubb timely disclaimed its obligations. Under New York Insurance Law Section 3420, insurers who disclaim coverage for bodily injury claims must do so in writing as soon as reasonably possible after they learn of the grounds on which to deny coverage. N.Y. INS. L. § 3420(d)(2). The Court cannot determine as a matter of law whether Chubb's disclaimer was timely.

   Capacity notified Chubb of the Olmeda lawsuit on March

13, 2009. At which time, Chubb knew more than 16 months had passed since the Accident and was thus aware of the grounds on which to invoke a late notice disclaimer. (See Homestead Br. 19; see also Chubb Resp. 13.) Chubb did not disclaim coverage until May 26, 2009, more than two months after it learned of the suit. Chubb explains that this delay was caused by Diamond's delay in providing Chubb's claims analysts with a copy of the Diamond Policy and unspecified "vital information regarding the Olmeda claim." (Chubb Resp. 14.) Diamond apparently did not respond to Chubb's request for information, but Chubb received a copy of Diamond's disclaimer letter on April 22, 2009. (Chubb Resp. 14.) At this point, Chubb transferred responsibility for this file from a claims administrator to a litigation specialist (Chubb Resp. 14), but it still took more than a month for Chubb to decide it would disclaim coverage on late notice grounds. Although New York law requires that an insurer have "reasonable time to adequately investigate a claim in order to determine whether it wishes to disclaim coverage," U.S. Underwriters Ins. Co. v. Congregation B'Nai Israel, 900 F. Supp. 641, 648 (E.D.N.Y. 1995), it is not at all clear what investigation was required to determine whether Chubb could disclaim on late notice grounds. In some cases an insurer's delay in disclaiming

coverage may be unreasonable as a matter of law. See, e.g., GPH Partners, LLC v. Am. Home Ass. Co., __ N.Y.S.2d __, 2011 WL 3847425, at *1 (1st Dep't 2011) (four month delay untimely as a matter of law); Indus. City Mgmt. v. Atl. Mut. Ins. Co., 64 A.D.3d 433, 434, 882 N.Y.S.2d 121 (1st Dep't 2009) (seven month delay untimely as a matter of law); Crocodile Bar, Inc. v. Dryden Mut. Ins. Co., 61 A.D.3d 1361, 1362, 877 N.Y.S.2d 778 (4th Dep't 2009) (62-day delay was not timely where insurer failed to establish the delay was "reasonably related to the completion of a necessary, thorough, and diligent investigation"). The reasonableness of a delay in disclaiming coverage is usually a question of fact, however. Congregation B'Nai Israel, 900 F. Supp. at 647. Here, the Court cannot decide as a matter of law whether Chubb's delay in disclaiming coverage was the product of a reasonably diligent investigation. Accordingly, summary judgment on this point is inappropriate. See City of New York v. Welsbach Elec. Corp., 49 A.D.3d 322, 323, 852 N.Y.S.2d 134 (1st Dep't 2008) (issue of fact whether insurer conducted prompt, diligent investigation precluded summary judgment on issue of timely disclaimer).

C. Chubb's "Drop-Down" Obligation

Chubb also argues that, even if Homestead's notice was

timely and/or Chubb failed to timely disclaim, it would have no obligation to cover Diamond's primary insurance obligations. The Court agrees that under the Chubb Policy, Chubb has no obligation to "drop down" and cover Diamond's obligations, and it has no duty to defend Homestead. Homestead does not contest either point.

The Chubb Policy has two components: "follow-form" excess coverage under Coverage A and first dollar coverage under Coverage B. Neither component requires Chubb to indemnify Homestead below the $1,000,000 limit of its primary Diamond Policy. Chubb's Coverage A provides that Chubb will pay "that part of a loss . . . which exceeds the applicable underlying limits." (Chubb Policy, Kantor Decl. Ex. G at 3.) Coverage A's "drop down" provision explains that Chubb will cover losses beneath the $1,000,000 excess layer only when the underlying insurance are either: "reduced by payments of judgments, settlements or related costs or expenses" or "exhausted by payment of judgments, settlements or related costs or expenses." (Id. at 10.) In other words, under Coverage A, Chubb only has drop down liability if Homestead's primary insurance has been reduced or exhausted by payments. Here, for the reasons discussed already, Diamond is not obligated make any payments in

connection with the Olmeda action. Thus, Homestead's primary insurance has not been reduced or exhausted within the meaning of the Chubb Policy, and the policy's drop down clause is not triggered. Under Coverage B, Chubb has no liability for losses and expenses to which the Diamond Policy would apply, "regardless of whether or not . . . the underlying insurance is available." (Id. at 4.) Here, it is undisputed that the Diamond Policy would apply to the Olmeda Action but for Homestead's late notice; accordingly, Chubb's Coverage B is inapplicable.

Similarly, Chubb has no duty to defend Homestead. Its defense obligation under Coverage A is implicated only where the Diamond Policy has been exhausted by "payments" and, again, Diamond has no obligation with respect to the Olmeda Action. Its defense obligation under Coverage B is triggered where Coverage B itself applies. (See Chubb Br. 9-10.) As mentioned already, Coverage B does not apply to losses to which the Diamond Policy applies, even if--as is the case here--the Diamond Policy is not available.

Accordingly, Chubb's motion for summary judgment is GRANTED IN PART AND DENIED IN PART. Whether Chubb has an obligation to indemnify Homestead for damages arising out of the

Olmeda Action turns on whether it timely disclaimed coverage, a question of fact for the jury. In any event, Chubb has no liability below the $1,000,000 basement of its excess coverage, and it has no duty to defend Homestead.

V. <u>Homestead's Claims Against Capacity</u>

In the event that it is not successful in its claims against Diamond and Chubb, Homestead argues that Capacity is liable to Homestead for damages totaling at least the cost of defending the Olmeda Action plus any damages that Homestead may eventually have to pay in that case. Homestead proceeds against Capacity on two theories: breach of contract and negligence. Homestead and Capacity have cross-moved for summary judgment on these claims; for the reasons that follow, both parties' motions are DENIED.

A. <u>Breach of Contract</u>

Homestead claims that Capacity orally agreed to handle all of Homestead's insurance-related matters, apparently "including reporting claims to the appropriate carriers." (<u>See</u> Homestead Br. 27.) Jeffery Cole, Sterling's president, testified that such an agreement existed and that Jay Bergstein, Capacity's president, acknowledged this agreement. (Kantor Decl. Ex. A, Cole Aff. ¶ 5.) Capacity, on the other hand,

although conceding that it routinely forwarded notices of claim to Sterling/Homestead's worker's compensation carrier, argues essentially that it never undertook to forward notices of claim to other carriers and that, in any event, the worker's compensation carrier was the only "appropriate" carrier in light of the information about the Accident that Capacity received from Homestead at the time. (See Capacity Resp. 10-12.) There are questions of material fact about the nature of the agreement between Homestead/Sterling and Capacity, if any, and whether Capacity had all the information necessary to fulfill its obligations under such an agreement. (Compare Cole Aff. ¶¶ 5, 9 (alleging the existence of an agreement) with Skelly Decl. Ex. H, Weronko Dep. at 55 (denying knowledge of an agreement)). Summary judgment on the breach of contract claim is therefore inappropriate.

B. Negligence

Homestead also maintains that Capacity was negligent in not informing either Diamond or Chubb about the Olmeda Accident. Homestead's and Capacity's cross-motions for summary judgment are denied on this point because there is an issue of fact concerning whether Capacity breached a duty to Homestead by not timely notifying Diamond or Chubb.

1. <u>Duty</u>

Under both New York and New Jersey law, it is well-settled that there are certain situations in which insurance brokers owe their clients a duty of care.  <u>See, e.g.</u>, <u>Harbor Commuter Serv., Inc. v. Frenkel & Co., Inc.</u>, 401 N.J. Super. 354, 367, 951 A.2d 198, 206 (N.J. App. Div. 2008); <u>Cosmos, Queens Ltd. v. Matthias Saechang Im Agency</u>, 74 A.D.3d 682, 683, 904 N.Y.S.2d 386, 388 (1st Dep't 2010).  This duty often arises in the context of a client who asks his broker to procure a specific type of insurance; there, a broker who fails to carry out this task with diligence and good faith may be liable to the client for damages.  <u>Harbor Commuter Serv.</u>, 951 A.2d at 206.  In both New York and New Jersey, however, a broker's duty may go further than the duty to procure insurance skillfully; if there is a special relationship between the broker and client, the broker will have a duty to perform carefully the tasks that the client relied on him to perform.  <u>See</u> <u>Glezerman v. Columbian Mut. Life Ins. Co.</u>, 944 F.2d 146 (3d Cir. 1991) (applying New Jersey law); <u>Abetta Boiler & Welding Serv., Inc. v. Am. Int'l Specialty</u>, 76 A.D.3d 412, 413, 906 N.Y.S.2d 540, 542 (1st Dep't 2010).  At least one court has recognized a broker's duty to forward notices of claims to the client's carriers:

> The evidence that as a matter of routine
> Abetta referred all questions regarding its
> insurance claims to Amerisc and Amerisc
> handled all Abetta's insurance needs,
> including referring its claims to insurers,
> establishes a special relationship between
> the two that imposed upon Amerisc a duty to
> Abetta to exercise a reasonable degree of
> care in notifying the appropriate primary or
> excess insurer of any claim reported to it
> by Abetta.

Abetta, 906 N.Y.S.2d at 542 (1st Dep't 2010).

Here, Homestead argues it justifiably relied on Capacity to forward notices of claims to all appropriate carriers. (See Homestead Resp. to Capacity 12.) Barbara Weronko, the claims manager at Capacity who handled the Olmeda claim, testified that it was Capacity's practice and procedure to evaluate the claims of its various insureds and forward them to the appropriate carrier. (Skelly Decl. Ex. H, Weronko Dep. at 55-56.) She had been performing that role at Capacity for more than twenty years. (Id.) Forwarding claims to the appropriate insurer was "customary," and Weronko understood that Capacity's insureds relied on Capacity to handle its claims. (Id.) Based on this testimony, which Capacity has not contradicted with anything in the record, this case seems analogous to Abetta, discussed above. The special relationship between Homestead and Capacity, as described by Weronko,

obligated Capacity to treat the Olmeda claim with reasonable
skill and care.

    2. <u>Breach</u>

    Notwithstanding that Capacity owed Homestead a duty to
handle the Olmeda claim with reasonable skill and diligence, the
Court cannot say as a matter of law that Capacity breached that
duty because there is a question of fact concerning what
Capacity knew about the seriousness of the Accident or the
extent of Olmeda's injuries. Specifically, Capacity states that
it received a "C-2" worker's compensation claim form regarding
the Accident from Homestead on October 22, 2007 and later a
follow-up fax with hospital information. (Capacity Br. 20-21.)
The C-2 form describes Olmeda's complaint as concerning his
"back of lower neck" and "collarbone," and it indicates that he
received "immediat[e]" treatment at the emergency room. (Skelly
Decl. Ex. M.)

    Capacity maintains that it did not learn anything more
about the Accident until March 12, 2009, after the Olmeda Action
was filed. In particular, it claims that it never saw the
"Incident Report Form" that Homestead prepared on a pre-printed
"Homestead Village Apartments" incident form. (Miranda Decl.
Ex. I; <u>see</u> <u>also</u> Skelly Decl. H, Weronko Dep. at 116.) This form

describes the Accident and states that Olmeda was taken to the hospital by ambulance. (Miranda Ex. I.) Notably, the statement about ambulance transport was not included on the C-2 form Capacity admits receiving on October 22, 2007. Barbara Weronko, the Capacity claims manager responsible for the Olmeda claim, testified that she learned of the ambulance transport for the first time when she saw the "Incident Report Form" at her deposition. (Skelly Decl. Ex. H, Weronko Dep. at 117.) For its part, Homestead claims it forwarded the "Incident Report Form" to Capacity. (See Homestead Opp. to Capacity 17.)

This factual discrepancy makes summary judgment inappropriate. Unlike with Homestead, it is disputed whether Capacity understood at the time that the Olmeda Accident was serious enough to merit an ambulance transport. This was a significant factor in the Court's earlier finding that Homestead should have known, as a matter of law, that the Accident could potentially trigger its liability insurance.[3] See supra at 12-13. Although it is a close call, the dispute as to whether

---

[3] The Court recognizes that, at first blush, there does not appear to be a significant difference between whether Capacity knew Olmeda received immediate treatment in the emergency room or that he was taken to the hospital in an ambulance. In most cases, the latter implies the former. The former does not always mean the latter, however, and the Court can imagine situations where relatively minor accidents might prompt a precautionary trip to the emergency room.

Capacity knew about the ambulance prevents the Court from reaching the same conclusion about Capacity. Instead, the Court leaves the determination as to Capacity's reasonable belief in Homestead's nonliability to the jury. Cf. St. James Mech., Inc. v. Royal & Sunalliance, 44 A.D.3d 1030, 1031-31, 845 N.Y.S.2d 83 ("It is only when the facts are undisputed and not subject to conflicting inferences that the issue can be decided as a matter of law.").

## CONCLUSION

For the foregoing reasons, Diamond's motion for summary judgment is GRANTED. Chubb's motion for summary judgment is GRANTED IN PART AND DENIED IN PART. Specifically, it remains to be tried whether Chubb timely disclaimed its coverage on late notice grounds. If it did not, its liability in any event will not drop down beneath the $1,000,000 basement of the excess policy, and it has no duty to defend Homestead. Capacity's and Homestead's cross-motions for summary judgment are both DENIED.

SO ORDERED.

/s/ JOANNA SEYBERT_____
Joanna Seybert, U.S.D.J.

Dated:    September 16, 2011
          Central Islip, New York